**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER CRANE, | : | |
| | : | CASE NO.: 2:15-cv-02886 |
| Plaintiff, | : | |
| | : | |
| v. | : | JUDGE WATSON |
| | : | |
| NATIONWIDE DEBT DIRECT, LLC, | : | MAGISTRATE JUDGE KEMP |
| | : | |
| Defendant. | : | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT NATIONWIDE DEBT DIRECT, LLC'S MOTION TO DISMISS COUNTS THREE AND FIVE OF PLAINTIFF'S AMENDED COMPLAINT [D.E. 17]

## I. INTRODUCTION

In his Amended Complaint, Plaintiff sufficiently pled a cause of action for both violations of the Ohio Consumer Sales Practices Act as well as the Ohio Credit Services Organization Act. Accordingly, the Defendant's Motion to Dismiss should be denied.

## II. RELEVANT FACTS

In his Amended Complaint ("Amended Complaint"), Plaintiff alleged the following:

- As an integral part of Defendants' marketing, Plaintiff received the mailed solicitation attached as Exhibit A and incorporated herein. Amended Complaint, ¶16.
- On or about October 15, 2014, Plaintiff called the number listed in Exhibit A and spoke with Joe Stone (hereinafter "Stone"), a representative at Nationwide. Stone Nationwide settles debts based on the Credit Card Reform Act. Amended Complaint ¶¶ 17 and 18.
- Stone further indicates Nationwide offers a federally regulated balance reduction program, that Nationwide obtained Plaintiff's information from Plaintiff's creditors

due to the Credit Card Reform Act, and that Nationwide had a "legal team" to represent Plaintiff. Amended Complaint ¶¶ 19 – 26.

- During their phone conversation, Stone indicated that Nationwide charges a flat fee of 20% of the client's debt total and that that fee is spread out 1/3 over the first 3 months and the remainder over 15 months. Amended Complaint ¶22.
- Dakota Pena (hereinafter "Pena"), another representative of Nationwide, emailed Plaintiff again indicating Nationwide offered a federally regulated program. Amended Complaint ¶ 28.
- In Paragraph 47 of the Amended Complaint, Plaintiff alleges Defendants committed "**material** unfair, deceptive, and or unconscionable acts…" [Emphasis Added].
- In Paragraph 47 of the Amended Complaint, Plaintiff also alleges a litany of deceptive and misleading acts, many with the relevant code sections or administrative code Defendant has violated.
- In Paragraph 48 of the Amended Complaint, Plaintiff alleges he was in fact deceived by the numerous deceptive acts of Defendant and that he suffered injury from the deception.
- In Count Four of the Amended Complaint, Plaintiff alleges violations of the Ohio Telephone Solicitors Act, alleges that pursuant to R.C. § 4719.14 each of the violations described are unfair and deceptive acts in violation of R.C. § 1345.02 and that the acts described had previously been determined by Ohio courts to violate the Ohio Consumer Sales Practices Act and were made available for public inspection prior to Defendants bad conduct. Amended Complaint ¶¶ 49 – 58.

- Defendants solicited buyers with mailed letters in order to provide the services of a credit services organization. The letter claimed, "You may qualify for a significant reduction of your consumer debt." Amended Complaint ¶66.
- Defendants solicited buyers with mailed letters in order to provide the services of a credit services organization. The letter claimed "POTENTIAL BENEFITS:" of "Significant Debt Reduction, Bankruptcy Alternative, Become free from Credit Card and Other Unsecured Debt, Low Program Payment, Save Thousands of Dollars in Interest, and No Home or Collateral Required." Amended Complaint ¶69.
- Defendant specifically indicated Plaintiff was seeking the mailer based on his "[r]evolving consumer debt and credit card payments" and then made further representations expressing or implying that correcting these deficiencies would be beneficial to his consumer reports and/or credit score. Amended Complaint ¶72.
- Defendant directed Plaintiff to review its website at nationwidedebtdirect.com where once again it represented a bankruptcy filing will remain on your credit report for ten years implying that debt settlement was a more beneficial course of action with regard to a consumer's credit report. Amended Complaint ¶74.
- A representative of Defendant further indicated Plaintiff's credit report will say "Paid in Full with a Zero Balance" or "Paid as Agreed with a Zero Balance". While acknowledging Plaintiff's credit score would go down in the short term, the representative then stated "[r]emember that during your program, after the account is settled, it will then reflect Paid in Full with a Zero Balance, or Paid as Agreed with a Zero Balance. Anytime you have something showing paid on your credit report that helps you." These statements are false. Amended Complaint ¶75.

## III. LAW AND ARGUMENT

### A. Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) citing *Bell Atlantic Corp. v. Twombly* (2007), 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929.

In order to defeat a motion to dismiss the "claims set forth in the complaint must be plausible, rather than conceivable." *Fink v. Twentieth Century Homes, Inc.* (Ohio App. 8th Dist.) 2010-Ohio-5486, citing *Bell Atlantic Corp. v. Twombly* (2007), 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929. Under *Twombly*, the factual allegations of a claim must be enough to raise a right of relief above the speculative level. *Id.* Plaintiff bears the burden to articulate enough facts to state a claim to relief that is plausible on its face. *Id.; Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level **on the assumption that all of the complaint's allegations are true.**" *Twombly* at 545. [Emphasis Added]

### B. Plaintiff has Sufficiently Stated his Claims.

#### 1. Plaintiff has properly plead a violation of the Ohio Consumer Sales Practices Act (Count Three).

It appears Defendant Nationwide Debt Direct, LLC (hereinafter "Defendant" or "Nationwide") believes Plaintiff must have actually contracted with Nationwide in order for the transaction to fall within the parameters of the Ohio Consumer Sales Practices Act. Defendant indicates that "to allege a prima facie claim under the CSPA, Plaintiff must 'show a material misrepresentation, deceptive act or omission' <u>that has impacted his decision to purchase the item</u>

[or service] at issue." Defendant's Motion to Dismiss at 5. While this is a true statement, it is grossly taken out of context in attempting to analogize it to the facts of this case. As applied to a deceptive solicitation case, the deceptive acts or misrepresentations need only be acts/misrepresentations a consumer would consider material to his or her decision-making process—the consumer does not need to obtain the goods or services to plead or prove a CSPA violation.

> As used in sections 1345.01 to 1345.13 of the Revised Code:
>
> (A) "Consumer transaction" means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things.

There is no ambiguity in the definition of a consumer transaction as defined by R.C. § 1345.01(A)--a consumer transaction includes a solicitation to supply a service, which is exactly what Plaintiff has alleged in Count Three.

Consistent with not only the plain language of the statute, but also the required liberal construction, the majority of courts in Ohio, including both the Eighth, Ninth, and Tenth Appellate Districts have held that mere solicitations to provide services are enough to state a claim for violations of the Act.

The Eighth District has addressed this issue in two reported decisions: 1) *Weaver v. J.C. Penney Co.* (8th Dist. 1977), 53 Ohio App.2d 165, 168-69, 372 N.E.2d 633, 635; and 2) *McDonald v. Bedford Datsun* (8th Dist. 1989), 59 Ohio App. 3d 38, 41 570 N.E.2d 299, 302. In *Weaver,* a store advertised an appliance for $9.99 but did not advertise that quantities were limited. A customer asked for a "rain check" but was told that the appliances were all sold and no more were available. The court allowed a claim by the consumer for violation of the Consumer Sales Practices Act even though no actual sale occurred because the advertisement did

not clearly state that only a limited number of the appliances were available and because the store refused to give the consumer a rain check. The court based its holding in part on the plain language of the Consumer Sales Practices Act which specifically includes solicitations for consumer transactions. *Weaver,* 53 Ohio App.2d at 169, 372 N.E.2d at 635.

In the *Bedford Datsun* case, the Eighth District allowed a consumer claim against a car dealer even though the consumer never bought the car that was the subject of considerable negotiations, including the payment of a deposit. *McDonald v. Bedford Datsun* (8th Dist. 1989), 59 Ohio App. 3d 38, 41 570 N.E.2d 299, 302.

Consistent with the above is *Utley v. M.T. Auto. Inc.* (9th Dist. 2009), 2009-Ohio-5161. In *Utley*, some consumers attempted to buy a car and had signed most of the necessary paperwork, but then refused to sign a mandatory arbitration agreement. The Utleys never purchased a car from M.T. Automotive, Inc. They later sued M.T. Automotive, Inc. for violating the Consumer Sales Practices Act and won. M.T. Automotive, Inc. appealed, saying that the trial court should have granted its motion for summary judgment because no sale had occurred. The Ninth District, citing *Weaver* and *Bedford Datsun* rejected this claim and held that a solicitation by itself can be enough to bring a claim for a violation of the Consumer Sales Practices Act. *Utley v. M.T. Auto. Inc.*, 2009-Ohio-5161 at ¶¶9-10.

The Tenth District interprets the statute similarly. In *Ferron v. Dish Network, LLC* (10th Dist. 2011), 195 Ohio App.3d 686, 695, 960 N.E.2d 705, 712-713,[1] a consumer sued Dish Network claiming its advertising was deceptive in violation of the Consumer Sales Practices Act along with some other claims that are not relevant to this case. Ferron never purchased a

---

[1] It is worth noting that this *Ferron* case is relevant to the instant claims whereas *Ferron v. Echostar Satellite, LLC,* 410 Fed. Appx. 903 (6th Cir. 2010) cited by Defendant in support of its position is not relevant. *Ferron v. Echostar*, along with all other cases cited by Defendant in support of its CSPA arguments, were decided on summary judgment. *Ferron* admitted he was not deceived and lost his CSPA claims accordingly. That important fact is clearly not present in this case.

subscription to Dish Network. The trial court dismissed Ferron's case for failure to state a claim. One of Dish Network's arguments for dismissal was that the advertising at issue was not a "solicitation". However, the court of appeals reversed and reinstated Ferron's Consumer Sales Practices Act claim. *Ferron*, at ¶33.

The court noted that the Consumer Sales Practices Act does not define solicitation and looked at the word's common meaning as well as the Ohio Attorney General's administrative rules. Based on the common meaning and Ohio Attorney General's definition, the court held that the advertising at issue was sufficient to be a solicitation and reinstated Ferron's claim under the Consumer Sales Practices Act even though he had not purchased any services from Dish network. *Ferron*, at ¶33.

Finally, it is worth noting that Nationwide filed a similar Motion to Dismiss in a recent case in the Court of Common Pleas of Cuyahoga County, Ohio – *Hightower v. Nationwide Debt Direct, LLC, Cuyahoga County Ct. Com. Pl. CV-15-849809*. Aspects of that matter differ from the matter at hand, however, Nationwide made similar allegations in its Motion in regards to the Consumer Sales Practices Act and the Credit Services Organization. Nationwide attempted to argue that Plaintiff cannot claim violations of the Ohio Consumer Sales Practices Act because she never hired Nationwide to perform work for her. The Hightower court stated in its decision that "[H]owever, based upon a plain reading of the Ohio statutes and case law, a solicitation alone is sufficient to state a claim against a supplier." The Hightower court found that Plaintiff had set forth facts which, if true, would entitle her to the requested relief for her Claims arising from alleged violations of the Consumer Sales Practices Act and Credit Services Organization and denied Nationwide's Motion for that part. *Hightower v. Nationwide Debt Direct, LLC, Cuyahoga County Ct. Com. Pl. CV-15-849809*. (Decision attached as Exhibit A).

As stated previously, Plaintiff has alleged the following facts that would be material to a consumer's decision to purchase Defendant's services:

- Defendant was not properly registered to do business in the State of Ohio,
- Defendant made false or misleading statements in violation of R.C. § 1345.02(A) including
    - Indicating it received Plaintiff's information from his creditors, indicating it offered a "federally regulated" program, and referring to the Credit Card Reform Act in an effort to create the false sense that this Federal Act would somehow assist him in settling his debts.
    - Indicating in the mailer attached as Exhibit A to the Amended Complaint that "[r]evolving consumer debt and credit card payments make you a candidate for this debt settlement program" while then later claiming in the sales pitch that Defendant only receives names and addresses from Plaintiff's creditors.
- Plaintiff alleged Defendant created the illusion that it was affiliated with a government program both by the appearance of the mailer, and the accompanying sales pitch. Plaintiff alleged facts regarding the appearance of the mailer as well as the accompanying sales pitch referring to a "federally regulated" program and the Credit Card Reform Act.
- Plaintiff alleged Defendant made claims in its solicitation and then disclaimed certain aspects of those claims in a smaller font at the bottom of the page. Plaintiff even cited the Administrative Code which Defendant violated and quoted the relevant language.

- Plaintiff alleges Defendant indicated creditors "write off" debt after ninety days which is false.
- Plaintiff alleged the solicitation at issue was deceptive in many ways by quoting specific portions of Exhibit A. *See* Amended Complaint ¶ 47 subsections a – s.

Please see the Amended Complaint ¶ 47 subsections a – s for a more comprehensive listing of the litany of facts alleging material violations of the Ohio Consumer Sales Practices Act. Plaintiff contends any one of these alleged facts standing alone would amount to a material misrepresentation or deception, but certainly viewing the totality of the circumstances and the sheer number of deceptive acts and misrepresentations meets this requirement.

Finally, Defendant represents to this Court it did not receive "fair notice of what the…claim is and the grounds upon which it rests" because every provision Plaintiff relied upon in the pleadings was not cited. Def. Mot. to Dis., pg. 7. Throughout the Amended Complaint, Plaintiff refers to the Ohio Consumer Sales Practices Act including section 1345.01 when referencing various definitions of the Act, section 1345.02 referring to the misleading statements, Administrative Code 109:4-3-02(C) when referring to the violation with regard to an exclusion or disclosure, sections 4719.02, 4719.05 and 4710.08 regarding the TSA violations incorporated into the CSPA, section 1345.09(B) when referring to the TSA as incorporated into the CSPA claims in Count Four, and 1345.09 in his prayer for relief. Defendant is being disingenuous in suggesting it did not receive fair notice of the statute Plaintiff alleges was violated, nor is it a requirement at the pleading stage to cite each and every provision of the CSPA that Plaintiff alleged Defendant violated.

**2. Plaintiff has properly pled a violation of the Ohio Credit Services Organization Act (Count Five).**

It appears Defendant is making two arguments in order to avoid being categorized as a

Credit Services Organization:

1. A consumer must actually pay money for credit repair services in order for an organization to fall within the definition of a "credit services organization", and

2. A business cannot provide both debt settlement services and credit repair services.

Both of these arguments must fail as a matter of law.

To state a viable claim under the Act, Plaintiff must be a "buyer" and Nationwide must be a "credit services organization". Under the Act, a "buyer" is an individual who is solicited to purchase the services of a credit services organization or who purchases the services. Ohio Credit Services Organization Act, §4712.01(A). A "credit services organization" is any person that in return for money represents to a consumer that they can improve a buyer's credit history. Ohio Credit Services Organization Act, §4712.01(C)(1)(a).

Defendant cites *Snook v. Ford Motor Co.,* for the proposition that to qualify as a "buyer" under the CSOA, "an individual must obtain the services of the [credit services organization] in exchange for money or its equivalent." *Id,* 142 Ohio App. 3d 212, 216, 755 N.E.2d 380 (2nd Dist. 2001); Def. Mot. to Dis., pg. 8. While the quote and proposed holding of the *Snook* case is accurate, it simply does not make sense and is therefore incorrect in its logic. The statutory definition of a "buyer" clearly contemplates a consumer who is solicited for credit repair services. Again, a buyer "means an individual who is solicited to purchase ***or*** who purchases the services of a credit services organization for purposes other than obtaining a business loan as described in division (B)(6) of section 1343.01 of the Revised Code. R.C. § 4712.01(A). (emphasis added). Clearly protecting a consumer who was merely solicited was contemplated by the Act.

While the definition of a "credit services organization" does state "[a]ny person that, in

return for payment of money or other valuable consideration readily convertible into money for the following services, sells, provides, or performs, or represents that the person can or will sell, provide, or perform, one or more of the following services…", the Act does not require actual money to be exchanged. Plaintiff alleged many times throughout the Amended Complaint that Nationwide represented it would provide these services in exchange for a fee, or the payment of money. These representations are enough to bring Nationwide within the statutory definition of the Ohio Credit Services Organization Act. To accept Nationwide's interpretation would render half the statutory definition of a "buyer" obsolete.

Finally, Defendant's argument that it cannot offer debt settlement services as well as credit repair services is not dispositive (or accurate). Certainly a business is able to offer more than one service, and it appears that is exactly what Nationwide is doing. Defendant stated Plaintiff qualified for a significant reduction of his consumer debt, that his revolving consumer debt and credit card payments made him a candidate for the debt settlement program, that the debts do not show up on a credit report and appear as if Plaintiff settled the debt on his own, that the debt settlement program was a better alternative than a bankruptcy because a bankruptcy appeared for ten years on a consumer report, that the delinquent debts would show up as "Paid in Full with a Zero Balance", and acknowledging Plaintiff's credit score would go down in the short term, but implying it would be better for his credit report overall. *See* Amended Complaint ¶¶62 – 75. Defendant agreed to provide these benefits for a fee of 20% of Plaintiff's debt total. *Id.* at ¶22.

Ohio courts have previously found car dealerships and attorneys to fall under the CSOA even though the primary purpose of the businesses was to sell cars and practice law respectively. See *Sannes v. Jeff Wyler Chevrolet, Inc.*107 Ohio Misc. 2d 11. The Ohio Department of

Commerce Division of Financial Institution ("DFI") is responsible for bringing enforcement actions for violations of the CSOA and has done so in a remarkably similar situation. The DFI brought an action against Wise Debt Relief and Michael Gross for soliciting Ohio consumers for debt settlement services via mailers. The DFI brought the action because the mailers stated "our firm wants to help resolve your credit card debt" and "we are experts in debt negotiation…" (Attached as Exhibit B). The DFI brought the action against Wise Debt Relief without any allegation the consumer actually paid money, and even though Wise Debt Relief was primarily a debt settlement company.

In this case, Plaintiff has alleged Nationwide made many more representations related to how debt settlement would benefit Plaintiff's credit report than those made in Wise. These allegations, taken as true, provide sufficient detail to state a claim for violations of the Ohio Credit Services Organization Act.

## IV. CONCLUSION

Plaintiff's Amended Complaint states claims for relief for the Ohio Consumer Sales Practices Act and the Ohio Credit Services Organization Act. As a result, the moving Defendants' motion to dismiss should be denied.

Respectfully submitted,

*/s/ Jeremiah E. Heck*

Jeremiah E. Heck (0076742)
Robert G. Parker (0089078)
Luftman, Heck & Associates, LLP
580 East Rich Street
Columbus, Ohio 43215
Phone: (614) 224-1500
Fax: (614) 224-2894
jheck@lawLH.com
rparker@lawLH.com

*/s/ Brian M. Garvine (per consent)*
BRIAN M. GARVINE (0068422)
Law Office of Brian M. Garvine, LLC
5 East Long Street, Suite 1100
Columbus, OH 43215
614/223-0290 Fax: 614/221-3201
E-mail: brian@garvinelaw.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on this 22nd day of January, 2016 a true and accurate copy of the foregoing *Plaintiff's Memorandum In Opposition To Motion of Defendants Nationwide Debt Direct, LLC to Dismiss Counts III and V of Plaintiff's Amended Complaint* thereof were served via the Court's Electronic Case Filing System on the following entities and individuals who are listed on the Court's Electronic Mail Notice list:

Lawren A. Zann, counsel for Defendant, at lawren.zann@gmlaw.com
Ashly L. Oliker, counsel for Defendant, at aoliker@fbtlaw.com

*/s/ Jeremiah E. Heck*
Jeremiah E. Heck (0076742)